Good morning, Your Honor. My name is Richard Therrien. I'm the attorney for the appellant, Theota Christie, and I'll serve as the attorney in the district court. I'd like to reserve five minutes for any rebuttal, if need be. The complaint challenges an entire breach of the chain of title. Ms. Christie's challenged each and every assignment from Bancorp, which was the original loaner, to Countrywide Bank, to Countrywide Home Loans, and then eventually to the assignment of Deed of Trust that happened in September later on. Those early ones had to do with the launch, and we had challenged the authenticity and the authority of those persons signing those documents, and therefore breaching the chain of title, and therefore giving her standing. We also allege that that breach of the chain of title, therefore there was no note which could have been a deposit into the pooling and servicing agreement. In that respect, we don't believe that EVANOVA would apply. Nevertheless, we think there are portions of EVANOVA when we come to the pooling and servicing agreement. For example, there are three California concepts that are being presented before the California Supreme Court, which I believe this Court should take a look at and at least evaluate. First of all, the application of the test set forth in Viaconzi, it's B-I-A-K-A-N-J-A versus Irving, it's 49-Cal-2nd-647. The second is the shifting the burden by the appellate is requiring them that they provide clear and positive evidence that there is a valid assignment. That is in a California Supreme Court case. That case is Carkwell versus title insurance and trust. It is at 42-Cal-2nd-284. Let me ask you... I beg your pardon, I didn't hear you. Let me just ask you, because you're arguing standing and I'm trying to figure out how Ms. Christie has been harmed by the allegedly invalid assignments of her deed of trust. Wouldn't she owe the same amount and face the same risk of foreclosure no matter who was collecting on her loan? Your Honor, the issue is whether or not it's the appellees who have the note. We know the answer to that based upon a 10-K funding by Bank of America... Well, can you answer my question first? Yes, Your Honor. The issue is who owns the note, therefore who is owed the obligation. Ms. Christie is the obligor. Who is the obligee? But she would face the same amount in terms of what she owed and the same amount of risk of foreclosure no matter who was collecting. Is that true? Well, Your Honor, this is not a foreclosure case. This is a violation of the Debt Collection Practice Act, and what we are saying is that Bank of America and Bank of New York Mellon and Back Home Loans are not the creditors to the loan. So yes, she does owe the money, but it's not to them. Is public policy now anybody, because somebody owes money, somebody has to come back and say, you owe it to us? There should be an intermediate step in which someone must have to prove, which is what Cockrell and the Homeowner Bill of Rights provides, that anyone who is challenging, especially if you're going to go into foreclosure arena, that you have to provide the note, you have to provide the deed of trust. Counsel, you want a declaration, this is part of your declaratory judgment action, that all of these defendants, that there is no obligation to pay any of them, that none of them can attempt to enforce this debt obligation. Are there any other candidates out there who might possibly be able to? Yes. Why, or in other words, why wouldn't that declaration on all of the, on this record be tantamount to a declaration that your client doesn't owe any lender for this, doesn't owe this money to any lender? Well, the monies would be owed to Bond Corp., who's the original lender. So we can't forget that part. Also, we must keep in mind that the, we also pled that, and there were affidavit, I beg your pardon, Bank of America in a consent decree, which this would be evidence that the affidavits were not based on personal knowledge, they were not notarized in the presence of a notary, which is quite striking when we have Kathy Oveyard, who's in South Carolina, somehow gets the assignment of deed of trust notarized in a county of Ventura in California. That is evidence that shows that there was not a proper authenticity, there was not a proper authority, there was not a proper notarization, it was not based, an affidavit based on knowledge, it's not, there's no promissory note that went to the appellees, and I think you have to take a look at the entire chain of title and step by step by step look to see whether or not there was a valid transfer of the note. Of course, the deed of trust would follow that, and we've cited that in our pleadings, it's also cited in our motion to cancel the instrument. We have a detailed discussion there as well. But these are all evidence, these are all keys, and I think the most striking part of all this is that in the 10-K, Bank of America says this, in a number of cases we do not hold and may not be able to obtain the underlining security, loan, or other obligation. This could cause us to forfeit the payments due us under these contracts. What basis do you have for arguing that that acknowledgement has anything to do with this specific transaction? Well, very simply, Your Honor, because when we, in addition to the motion to dismiss the First Amendment complaint, we also had pending before the district court a motion to cancel the instrument. And the opposition came forward without any affidavits from Kathy Oregard, if she even exists. There was no affidavits from the notary, there was no production of the note, and so there was zero evidence, which reinforces what we were saying about the 10-K, talking about the consent decrees, talking about Kathy Oregard not being a vice president or whatever authority that she would have with MERS. We set forth about you have to have proper assignments, and they set forth all the criteria for doing that. And we still haven't even got to the case of Bayekonzi, which talks about there's a test that gives a third party standing on a breach of contract, and there's six prongs to that. And one of the things you have to take a look at is what is the end and aim of the pooling and servicing agreement. It was clearly that it was to have Ms. Christie make monthly payments and to hold her liable if she failed to make those payments on the note. This gives her privity under the contract, and that's set forth in another California Supreme Court case of Lucas v. Hamm, which is 56 Cal 2nd 583, and they basically had adopted the same principle under Bayekonzi. And the six elements, if I may, are one, the extent to which the transaction was intended to affect the plaintiff. Obviously you have a bank in New York, Maryland, what are they doing? They're getting into an agreement on the pooling and servicing agreement, and then they're holding it up and say, you know what, we are now parties to the deed of trust. And the deed of trust, paragraphs 13 and 22 specifically says, paragraph 13 says that they bind themselves to the deed of trust. Paragraph 22 talks about them having, that Ms. Christie can bring any lawsuit concerning any defenses that are available. Going on to number two is the foreseeability of harm to the plaintiff. It certainly was foreseeable that harm to her would ensue in the event that she failed to make the payments. Number three, the degree of certainty that the plaintiff suffered injury. Missing payments would certainly affect her credit record. Number four, the closeness of the connection between the defendant's conduct and injury suffered. That certainly is a primary factor in causing this particular injury.  We have to be honest here. Her ability to protect her interests in the note was practically nil. It's Bank of America, it's BAC Home Loans, and Bank of New York Trust who held all the cards. She had none. Number six is the policy preventing future harm, which that favors imposing a duty of care on the entity in the appellee's position. In regards to the other issue that's actually in Ivanova is Cockrell. And that's Cockrell versus Title Insurance and Trust Company, 42 Cal App, 2nd 284. And what the California Supreme Court held was that a party claimed to own a mortgage by the assignment could not collect on the loan until it proved the assignment as valid, thus shifting the burden of proof to the assignee. And in conjunction with that is the Homeowner's Bill of Rights, which is Civil Code 2923.55B3. What's interesting about that is the California Attorney General filed an amicus curiae brief in the Ivanova case. And the Attorney General's position was that the Homeowner's Bill of Rights, this particular statute that I just mentioned, was a court decision. Well, I wonder if I might ask you, sorry to interrupt, but your time is limited. I just want to get to an issue that I think may be important. There seems to be a sense that Ivanova, given the trend of other precedents that are out there, will reject Glaske. Glaske is treated as an outlier. If that is the outcome, what will be left of your position that your client does have standing to challenge the assignments at issue here because of the way in which they were carried out? Won't that eliminate that standing argument of yours? Are you saying that if Ivanova is in our favor? No. If Ivanova rejects Glaske, which would be contrary to your position, I would think, doesn't that undercut your argument, your standing argument on behalf of your client? Well, they'd have to reject their own rulings in Cocquerel and by Contu. If, in fact, let's say all that happens, no, that does not defeat our case or impair it whatsoever because what we have pled is that before the pooling and servicing agreement, before the note and the deed of trust went there, we're also saying everything that occurred before that, which was the allonge that I mentioned, and then from those two entities, which are the two countrywide, and then to the assignment of deed of trust. All those are void because they failed to meet the guidelines and the criteria set forth in Article 3 and 9 of the Uniform Commercial Code. So we have multiple, we believe we have standing to challenge the authenticity and the authority which is set forth in the Commercial Code having to do with the assignments in the allonge to the deed of trust. And then after that, even, in fact, if this court was to hold that we have standing and we have stated a valid claim challenging the allonge and those assignments breaking the chain of title, the court never really gets to what is going to happen on the pooling and servicing agreement. I haven't heard you address the Rajaman development in New York, the Second Circuit, and then this most recent New York Court of Appeals case. Are we just to ignore that? We don't really look at that because that seems to significantly affect your standing here. I understand that. However, we have to recognize that it's the California Supreme Court and both the Bioconzi and the Cockrell cases that matter. They are superior. But here it's a matter of interpreting the New York law. We have two in the New York case and in the Second Circuit who have now weighed in on that and giving us some significant guidance on what we should do here. I guess there's a number of other courts that are questioning Glaske, and so do you want us not to consider those other decisions? Well, first of all, the California Supreme Court, I believe in those two decisions that I've mentioned, which is Cockrell and Bioconzi take precedent over the appellate court in the Second District and also the court in New York. This is California. I think the courts here in California ought to interpret the deeds of trust. I think they ought to interpret the standings for third parties as to whether or not they got privy to contracts all under California law. And in fact, when we're taking a look at the deed of trust and the note, the interpretation of those is based on California law. It's not based on New York or Texas or anywhere else we want to go. It's based on California law. The California Supreme Court has spoke strongly on these two positions. They have set forth the test that is to be applied. We are urging that this court apply those tests or at least wait until the Supreme Court makes a ruling. But even an adverse ruling by the Supreme Court does not defeat our case for the reasons I stated, and that has to do with that we have already challenged each segment of that chain of title up to including the assignment of deed of trust. My time is about up, and I was trying to still reserve a few minutes afterwards. Well, we'll see if you need to. Okay. Thank you, counsel. Thank you, Your Honors. Good morning. Douglas Winter for the Bank of New York Mellon and its co-defendants. Counsel has presented this morning arguments that were not raised in the district court, in their brief on appeal, or in their reply brief. The arguments about the Via Conjure case, which, by the way, is about imposing a negligence duty for reasons of public policy, and also the Cockrell case was not argued. Cockrell involves what a plaintiff who is an assignee must show judicially to move on the assignment. That's, of course, not the case here. These arguments are lifted wholesale from the appellate briefs in the Ivanova case. The court asked about that case, and I want to address it here because there were at least six independently sufficient grounds on which this court can affirm the district court's judgment without implicating the Ivanova review by the California Supreme Court. Some of these grounds have been noted. The first, however, is noted in a recent decision from this court in Hunt, is that Ivanova's issue is limited to the parameters of a wrongful foreclosure claim, which is not presented here. And second, as we've noted, an allegation that an assignment is void in a wrongful foreclosure case. That issue in this case, as well as in Glasky, as well as in Ivanova, is governed by New York law because plaintiff here alleges in paragraph 22 of the First Amendment complaint that the PSA is governed, that issue here is governed by New York law. And the courts have spoken in New York, as has been noted earlier today. This kind of challenge, it's voidable, not void. Third, Ivanova, like Glasky, involved a wrongful foreclosure claim, which perforce is brought post-foreclosure. It's a post-foreclosure action. Right, and so this property, the Ladera property, has not been foreclosed on. That's correct, the Christie property. Okay. This property, yes. Okay, it's not been foreclosed upon. This property has not been the subject of a foreclosure. As a result, it falls within a consistent, absolutely consistent line of California cases holding that you cannot mount a pre-foreclosure, preemptive challenge to the authority to foreclose. California is a nonjudicial foreclosure state, has no show-me-the-note requirement, has no show-me-the-deed-of-trust requirement. You don't have to record either of those. But in this case, they did. They recorded the deed of trust. Now, the challenge here is— The deed of trust is now recorded in the name of Bank of America? Is that correct? No, it's not. What is it in the name of? The deed of trust was assigned to the Bank of New York Mellon by MERS. Okay, but Bank of America is servicing the loan? Yes, that's correct. Was, yes, is servicing the loan. Can you understand why someone in Christie's shoes would say, wait a minute, I refinanced my loan with, I don't know who she did it with. With Countrywood. I'm sorry, with Bond Corp. Okay, whoever she did it with. How come Bank of America is asking you to pay money, and how do I know I should be paying money to Bank of America? I can see no reason why she would question that, and let me tell you why. The complaint alleges that in 2009, Ms. Christie entered into loan modification discussions with Bank of America, with defendants. That's 2009, well before this assignment was recorded. Second, as noted, it's the law. You don't need to record an assignment of the deed of trust. Well, that's right, but I'm just saying. No, wait, wait. I'm sorry. What if you were sent something from Bank of America, when you refinanced your loan, you think you owe money to this other bank, and Bank of America sends you a request for payment? I'm asking this because, as a practical matter, I think just today alone we have three of these cases. I'm trying to figure out sort of a broader kind of role so that we can issue something so that we don't keep getting these cases. Okay, because you can understand that the person, the mortgagee, can be confused, and we do know that, I mean, regardless of the applicability of any consent decree to this case, we do know that, at least with respect to some other cases possibly, that there were improprieties in the transfer and some robo-signing and all of that. And so what we want to make sure is that the debtor does pay and pays the right person, right? Understood. And that does require factually plausible allegations. Let me tell you here what the allegations say, and it's really from the record, from the documents themselves, because otherwise the allegations are simply conclusions. First, there was a refinance. It was with Bond Corp. And that note that Ms. Christie signed said that it could be assigned to another lender without notice to her. On the same day, she also executed a deed of trust that named Merz as the beneficiary, as nominee for the lender, and the lenders of signs. On the same day, Bond Corp. signed an allonge, which was publicly recorded, assigning the note to Countrywide. And Countrywide, in turn, in that publicly recorded allonge, assigned it to Countrywide Home Loans. Counsel, I understand where you're going, but just to pick up on Judge Wardlaw's question, if you think of the position of the debtor, yes, you get this debt validation notice from Bank of America, indicating by their records that the debtor owes a certain amount. But then not all that much later, the debtor receives a debt validation notice from Recon Trust Company. And so you have another, indicating a different amount of the indebtedness. So you have this sort of confusion of parties, leaving, I would suggest, the debtor understandably uncertain about to whom she owes this money, and she wants to be sure that she's paying the money to the right party. And, of course, those notices were at different points in time, which necessarily means different amounts owed. But both of those notices, and Bank of America's in particular, as I recall, says, if you have any questions, contact us. She contacted Bank of America. That's in the records. She asked who held her loan, and Bank of America told her that the Bank of New York Mellon held her loan. This is before the recording of the assignment of deed of trust. It's another indication, again, about what she knew. She knew that Countrywide was the loan servicer two months after she entered into the loan agreement. But even in the history of this case, hasn't Bank of America been characterized in different ways? At one time, it appears to actually be the owner of the loan. At other times, it's identified as a servicer and a debt collector. So, again, that just adds to the confusion of the role the roles play. But as the loan servicer, it stands in the shoes of the owner of the loan. And the services are often indicated as that so that the payments don't get sent to the wrong place. You'll even see the letter in the record says, Bank of America, when it identifies the Bank of New York Mellon, says, do not send your payments to Bank of New York Mellon. Send it to the loan servicer. That's us. So, is there... This is leading me to believe that we should defer pending IANOVA and that we should make a decision on standing grounds. But it's a contrary argument to that. Contrary argument is... I've made a couple. Let me give you the others. First, we've got to have a plausible factual basis to indicate that this loan was not transferred at the time the PSA was entered. The Second Circuit in Rajahman says the PSA was sufficient to assign the note and the deed of trust. The Second Circuit in Rajahman also says that you cannot rely on the date of the recording of an assignment of the deed of trust because that does not equate to the date the assignment took place. So that does not create a plausible factual allegation that it was assigned on the date the assignment happened to be recorded. More than that, here we're lacking in plausible allegations of prejudice, causation, harm. If we take this to the full circle, let's step back and hear what is really at issue. This is not about voiding the deed of trust. It's about voiding an assignment. If these allegations are true, if we accept them, if we just say, OK, the assignment is void, what does that mean? That means there's someone who holds the deed of trust, and it's either Bond Corp or it's Bank of America because Bond Corp assigned it to Bank of America countrywide the day that the note was signed. That means Bank of America, I would argue, but even if it's not Bank of America, Bond Corp has the ability to foreclose. So what are all the injuries that have resulted from this supposedly defective assignment? They're purely hypothetical. They don't exist. There's no allegation that there's been a duplicative demand for payment. There's no allegation that Ms. Christie dealt with anyone other than defendants after the day she signed her loan. There's no allegation that anyone has demanded she's overpaid, that she's double paid, that she's been subject to double threats of foreclosure. There's none of that. There's no other entity identified. If there's another entity out there, surely they would have shown up before today, as also as my discussion about what happens if it's Bond Corp. You heard opposing counsel, I think, acknowledge the indebtedness to Bond Corp, which I gather was the original lender here. The concern is that at this late date, other parties are coming forth and saying, no, you owe the money to us, and that is what is troubling. But first, they have not. And second, what concern is of that to her? In other words, if that's an issue between Bond Corp. and the Bank of America, they can litigate that or more likely resolve it without litigation. In other words, that issue is between the parties to that assignment. Well, that answer goes to the standing question. Well, yes, because she's not a party to those assignments. Right. And she shouldn't have and doesn't have the ability to challenge them. I want to mention, however, that these hypothetical injuries, to my mind, do go, as Rogerman indicates, to Article III standing, with the exception of the FDCPA claim, which involves a statutory penalty. So that theoretically would not fall within Article III. But on the issue of standing, these matters of standing are not the ones that are before the California Supreme Court and Ivanova. In other words, the most particular one, which says, the California courts say you cannot bring a preemptive action, pre-foreclosure. That's not before the California Supreme Court and Ivanova. The Glaske itself acknowledges that preemptive foreclosures are a different animal than the one presented there, which is post-foreclosure. And that's the wrongful foreclosure context, which is not presented here. Excuse me, Counselor, just from my own learning. Are you saying that in the context of a wrongful foreclosure action, if a party in the position of the appellant here felt that the wrong party had foreclosed and had arguments on the basis of defects in assignments that led a party to foreclose, all of those issues could be raised in the context of that wrongful foreclosure action? That would be a vehicle for doing that? No, I'm not saying that. I'm saying that some of those issues could be. We're talking about, in other words, the issues presented, for example, in the Glaske case, the Ivanova case, the issue before the California Supreme Court, is whether in a post-foreclosure lawsuit you can raise this issue, because the California courts, other than Glaske, have said, no, not a violation of the PSA. I understand, but what about issues about irregularities in the endorsement, a claim that signatures have been fraudulently, there's fraud involved in representing individuals that personally appeared and signed documents, the kind of robo-signing thing that we referred to earlier. There you're going to the question of whether there is a statutory standing to bring those, because there are no common law claims of that sort in California, and courts have ruled that several times. There also are no statutory claims until the Homeowner's Bill of Rights, which was passed. I'm sorry, until? The Homeowner's Bill of Rights, which was recently passed by the legislature. But even there, I mean, robo-signing has many, many definitions and thoughts, but the robo-signing law in California, unlike the one in Arizona, which the court dealt with in the Merce case, is one that says the servicer must review information to assure that the debt is essentially genuine before foreclosing. And that's the extent of the so-called robo-signing law. And that law does not provide for a wrongful foreclosure action. It provides only for actual damages, and that law did not apply to this transaction. If there are no further questions, I want to add one point on the FDCPA, if I may. The letters, there are two letters challenged on this appeal, and they speak for themselves. They are not debt collection letters. But there's a curiosity here that I want to point out in the court ruling on that to keep in mind, and that is for plaintiffs' challenge to the fair debt letters to work, the parties have to be debt collectors. Bank of America and Reckon Trust have to be debt collectors. That's contrary to the theory underlying this case, which is that there was no valid assignment, and thus they do not have the debt. Now, the Fair Debt Collection Practices Act regulates practices, not entities. In other words, if you're a grifter or a spammer or someone who commits a fraudulent act, FDCPA does not preempt those causes of action, and it doesn't supplant them. So if you don't own a debt, then you're subject to any number of potential theories of liability. But it's not FDCPA. And I raise that because the concern that I would express to the court is opening this kind of claim in an FDCPA context, a challenge to the authority to foreclose, would essentially eviscerate the California non-foreclosure system because now everyone will be bringing an FDCPA claim that challenges the authority to foreclose before the foreclosure, which is exactly what happened here. All right. Thank you, counsel. Thank you. You can have two minutes to sum up. I'll just quickly bullet point my thoughts. First of all, in regards to a thought that we may not have, didn't bring the cases I mentioned today were not raised below. It's the reason I brought them is because of the court's recent order asking us to expound on that. Quickly, void, voidable. Quite frankly, under civil code 3412, it doesn't make a difference. The statute is very specific, whether it's void or voidable, and just the likelihood it can cause injury is sufficient to void. There seems to be a lot of thought and talks about a preclosure or a preventive foreclosure. That's not what we are seeking in our complaint. It was a straight fair debt collection practice violation. Also, the date of the assignment, that's quite interesting. First of all, that was not raised in the district court. Nevertheless, let's take a look at the assignment of deed of trust. What it says is this does hereby grant. That is present. It's not something that's going to happen in the future. It's not something that happened in the past, but instead it happened, hereby does grant, and it happened on September 20, 2011. In regards to Article III and its application, this court in Enright Field had already held that Article III does apply, and I realize that there's some thoughts about that Dubrunner should be the case that controls here. However, Dubrunner was in a foreclosure situation. We are not in that situation here. This is a fair debt collection practice. And in regards to, lastly, the debt collection, we must be mindful of the fact of the numerous letters that went out, and they all have one thing in common. We're debt collectors. And on one of the letters, it says Bank of America is the debtor. If you're not a debtor and you're sending— how do you get around the fact that you can send out a letter claiming you're a debtor, you're trying to collect the money, but somehow you're not involved in the fair debt collection practice if there's a violation? I think that that's unreasonable to think of that. Other than that, I don't have anything else, Your Honors. Thank you, counsel. Thank you.
judges: Lipez, Wardlaw, Murguia